IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| MYRNA MARIE CARBONE, *et al.*, | * | |
| Plaintiffs, | * | |
| v. | * | Civil Action No. RDB-15-1963 |
| DEUTSCHE BANK NATIONAL TRUST COMPANY, *et al.*, | * | |
| | * | |
| Defendants. | | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## **MEMORANDUM OPINION**

Plaintiffs Myrna Marie Carbone ("Ms. Carbone") and John Carbone ("Mr. Carbone") (collectively, "Plaintiffs") bring this action against Defendants Deutsche Bank National Trust Company [1] ("Deutsche Bank"); OCWEN Loan Servicing, LLC ("OCWEN"); Altisource Portfolio Solutions, S.A. ("Altisource Solutions");[2] and Altisource Holdings, LLC ("Altisource Holdings"), alleging various tort claims under Maryland law.[3] Specifically, Plaintiffs' claims stem from an alleged mold infestation on their property after pipes burst on a property owned by Defendant Deutsche Bank. The jurisdiction of this Court is predicated on diversity of citizenship under 28 U.S.C. § 1332.

---

[1] Plaintiffs incorrectly name Defendant Deutsche Bank as "*Deutsch* Bank National Trust Company" in their initial Complaint (ECF No. 2). Plaintiffs corrected this misspelling in the Amended Complaint (ECF No. 22), thus the Clerk of the Court is directed to re-caption this action to reflect the correct spelling.

[2] The Records of this Court reflect that there has been no service of process upon the Defendant Altisource Portfolio Solutions, S.A., which is alleged to be a Luxembourg corporation with its principal place of business located in Luxembourg. Amended Compl. ¶ 7.

[3] Plaintiffs originally named CitiMortgage, Inc., HLSS Holdings, LLC, and Altisource Solutions, Inc. as additional defendants. *See* Compl.; *see also* Amended Compl. Plaintiffs subsequently voluntarily dismissed these defendants. Stipulation of Dismissal, ECF No. 19; Notice of Voluntary Dismissal, ECF No. 48.

Presently pending are Defendant Deutsche Bank's Partial Motion to Dismiss for Failure to State a Claim (ECF No. 36);[4] and Defendant Altisource Holdings's Motion to Dismiss for Lack of Jurisdiction (ECF No. 45). The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2014). For the reasons that follow, Defendant Deutsche Bank's Partial Motion to Dismiss for Failure to State a Claim (ECF No. 36) is GRANTED; and Defendant Altisource Holdings's Motion to Dismiss for Lack of Jurisdiction (ECF No. 45) is GRANTED. Accordingly, the gross negligence claim asserted against Deutsche Bank in Count II is DISMISSED, as is the request for preliminary and permanent injunction. All claims against Altisource Holdings are DISMISSED.

BACKGROUND

This Court accepts as true the facts alleged in a plaintiff's complaint. *See Aziz v. Alcolac, Inc.*, 658 F.3d 388, 390 (4th Cir. 2011). This action arises from water damage to Plaintiffs' property located at 377 Volley Court, Arnold, Maryland, 21012 ("Carbone Property"). Amended Compl. ¶¶ 1-2, 17, ECF No. 22. The Carbone Property is a duplex, and thus shares a wall with the property located at 375 Volley Court, Arnold, Maryland, 21012 ("REO Property"). *Id.* ¶ 19. Defendant Deutsche Bank, as trustee for Bravo Mortgage Asset Trust 2006-1, Bravo Mortgage Asset Backed Pass-Through Certificates, Series 2006-1 (collectively, BMAT 2006-1), owns the REO Property. *Id.* ¶ 20. Defendant OCWEN allegedly acted as loan servicer for Deutsche Bank, *id.* ¶ 6, while Defendants Altisource Holdings and Altisource Solutions allegedly provided property management services for the

---

[4] Although Deutsche Bank also filed an Answer (ECF No. 37) as to Counts I, III, IV, and V of the Amended Complaint (ECF No. 22), it seeks to dismiss Count II (Gross Negligence), Plaintiffs' Request for Punitive Damages, and the accompanying Request for Preliminary Injunction. *See generally* Def. Deutsche Bank's Partial Mot. to Dismiss. Count II was not pled against Defendant OCWEN, nor was there any request for injunctive relief against OCWEN, which has filed an Answer (ECF No. 37) to Counts I, III, IV, and V.

REO Property, *id.* ¶ 39.

On February 18, 2015, the Carbones allege that a pipe burst on the REO Property, causing water to flood both the REO Property and the Carbone Property. *Id.* ¶¶ 42, 46. The pipe burst because, according to the Carbones, Deutsche Bank "negligently turned the power off (or allowed the power to be turned off), while negligently leaving the water on (or allowed the water to remain turned on) at the REO Property during the winter[.]" *Id.* ¶ 75. The resulting flood of water allegedly caused moisture damage and mold infiltration to both properties. *Id.* Plaintiffs allegedly reported the incident to "Altisource Solutions' Property Preservation and Inspection division" on the same day." *Id.* ¶ 43. Plaintiffs claim that they continued to communicate with "Altisource" regarding the incident and amelioration plans. *Id.* ¶ 47; *see also* Amended Compl. Ex. E, Marie Carbone Aff. ¶¶ 8-10, ECF No. 22-5. Although the standing water issue was resolved on March 4, 2015, mold and other moisture damage allegedly materialized in Plaintiffs' laundry room and bathroom. Amended Compl. ¶¶ 49-50, 59, 76-77. On some date in early April, a cleanup crew arrived at the REO Property to inspect the water damage. Marie Carbone Aff. ¶ 12. Ms. Carbone alleges that the cleanup crew represented that it was employed by "Altisource." *Id.*

In the meantime, Plaintiffs engaged counsel on March 27, 2015, who notified Deutsche Bank of the alleged water damage and mold. Amended Compl. Ex. H, ECF No. 22-8. They subsequently filed suit in the Circuit Court for Anne Arundel County, Maryland on May 15, 2015. Compl., ECF No. 2. Defendants Deutsche Bank and OCWEN timely removed the action to this Court pursuant to 28 U.S.C. §§ 1441 and 1446. In an effort to avoid "preservation of evidence or spoliation issues," counsel for Deutsche Bank contacted

Plaintiffs' counsel on August 24, 2015, to schedule a date on which a Deutsche Bank representative could inspect the REO Property to determine appropriate remedial measures. Def. Deutsche Bank's Partial Mot. to Dismiss, 3, ECF No. 36. Plaintiffs then inspected the REO Property on September 10, 2015. *Id.*

Plaintiffs' Amended Complaint asserts five counts arising under Maryland law against the Defendants: Negligence (Count I); Gross Negligence (Count II); Negligent Supervision (Count III); Negligent Hiring (Count IV); and Private Nuisance (Count V).[5] Amended Compl. ¶¶ 61-102. Plaintiffs also seek a preliminary injunction against Deutsche Bank to compel Deutsche Bank to remediate the remaining mold and water damage. *Id.* ¶¶ 104-109. Of relevance to the present Motions, Plaintiffs request punitive damages from Defendants Altisource Solutions, Altisource Holdings, and Deutsche Bank. *Id.* ¶ 110(c).

STANDARDS OF REVIEW

**A. Rule 12(b)(2) of the Federal Rules of Civil Procedure**

A motion to dismiss under Rule 12(b)(2) of the Federal Rules of Civil Procedure for lack of personal jurisdiction challenges a court's authority to exercise its jurisdiction over the moving party. *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). The jurisdictional question is "one for the judge, with the burden on the plaintiff ultimately to prove the existence of a ground for jurisdiction by a preponderance of the evidence." *Id.* A court may hold an evidentiary hearing or permit discovery as to the jurisdictional issue, but it also may resolve the issue on the basis of the complaint, motion papers, affidavits, and other supporting legal memoranda. *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 276 (4th Cir. 2009); *see also*

---

[5] Apart from Count II, Plaintiffs' claims are asserted against all Defendants. Count II is asserted only against Defendants Altisource Solutions, Altisource Holdings, and Deutsche Bank.

4

---

*Armstrong v. Nat'l Shipping Co. of Saudi Arabia*, Civ. A. No. ELH-13-03702, 2015 WL 751344, *3 (D. Md. Feb. 20, 2015). In the latter situation, a plaintiff need only make "a prima facie showing of a sufficient jurisdictional basis to survive the jurisdictional challenge." *Consulting Eng'rs Corp.*, 561 F.3d at 276. When considering whether the plaintiff has made the requisite showing, "the court must take all disputed facts and reasonable inferences in favor of the plaintiff." *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003).

## B. Rule 12(b)(6) of the Federal Rules of Civil Procedure

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P 8(a)(2). Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

The Supreme Court's recent opinions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), "require that complaints in civil actions be alleged with greater specificity than previously was required." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). In *Twombly*, the Supreme Court articulated "[t]wo working principles" that courts must employ when ruling on Rule 12(b)(6) motions to dismiss. *Iqbal*, 556 U.S. at 678. First, while a court must accept as true all the factual allegations contained in the complaint, legal conclusions drawn from those facts are not

afforded such deference. *Id.* (stating that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim); *see also Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012) ("Although we are constrained to take the facts in the light most favorable to the plaintiff, we need not accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." (internal quotation marks omitted)).

Second, a complaint must be dismissed if it does not allege "a plausible claim for relief." *Iqbal*, 556 U.S. at 679. Although a "plaintiff need not plead the evidentiary standard for proving" her claim, she may no longer rely on the mere possibility that she could later establish her claim. *McCleary-Evans v. Maryland Department of Transportation, State Highway Administration*, 780 F.3d 582, 586 (4th Cir. 2015) (emphasis omitted) (discussing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) in light of *Twombly* and *Iqbal*). Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555.

### C. Request for Preliminary Injunction Pursuant to Rule 65

The decision whether to issue a preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure is committed to the sound discretion of the district court. *Network Sys. v. InterDigital Commc'ns Corp.*, 17 F.3d 691, 693 (4th Cir. 1994). As the granting of preliminary injunctive relief is an "extraordinary remedy[,]" it will "only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Resources Defense Council*, 555 U.S. 7, 22 (2008); *accord Manning v. Hunt*, 119 F.3d 254, 263 (4th Cir. 1997). To make such a "clear showing," the plaintiff must establish "[1] that he is likely to succeed on

the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *The Real Truth About Obama, Inc. v. Federal Election Comm'n*, 575 F.3d 342, 345-46 (4th Cir. 2009) (quoting *Winter*, 555 U.S. at 20), *vacated by* 130 S. Ct. 2371 (2010), *reinstated in part by* 607 F.3d 356 (4th Cir. 2010). The plaintiff must satisfy all four requirements. *The Real Truth About Obama*, 575 F.3d at 345-46; *accord Dewhurst v. Century Aluminum Co.*, 649 F.3d 287, 290 (4th Cir. 2011) ("*Winter* thus requires that a party seeking a preliminary injunction . . . must clearly show that it is likely to succeed on the merits."); *Centro Tepeyac v. Montgomery Cnty.*, 722 F.3d 184, 188 (4th Cir. 2013).

## ANALYSIS

### A. Defendant Deutsche Bank's Partial Motion to Dismiss

#### 1. *Count II—Gross Negligence*

In moving to dismiss Count II of the subject Amended Complaint, Deutsche Bank argues that Plaintiffs fail to allege any facts approaching the requisite showing for gross negligence. Under Maryland law, gross negligence entails:

> an intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another, and [it] also implies a thoughtless disregard of the consequences without an exertion of any effort to avoid them. Stated conversely, a wrongdoer is guilty of gross negligence or acts wantonly and willfully only when he inflicts injury intentionally or is so utterly indifferent to the rights of others that he acts as if such rights did not exist.

*Barbre v. Pope*, 935 A.2d 699, 717 (Md. 2007) (quoting *Liscombe v. Potomac Edison Co.*, 495 A.2d 838, 846 (Md. 1985)); *see also Romanesk v. Rose*, 237 A.2d 12, 14 (Md. 1968). As gross negligence "implies malice and evil intention," *Bannon v. B&O R.R. Co.*, 24 Md. 108, 124

(1866), Maryland courts require that malice be alleged as part of such a claim. *See, e.g.*, *Foor v. Juvenile Servs. Admin.*, 552 A.2d 947, 956 (Md. Ct. Spec. App. 1989) (dismissing gross negligence claims in the absence of any allegations as to malice on the part of defendants). This Court has cautioned that, "[w]hen dealing with such a standard, bald and conclusory allegations will not suffice; specificity is required." *Wright v. Carroll Cnty. Bd. of Educ.*, Civ. A. No. ELH-11-3103, 2012 WL 1901380, at *13 (D. Md. May 24, 2012) (citing *Smith v. Gray Concrete Pipe Co.*, 297 A.2d 721, 732 (Md. 1972); *Nast v. Lockett*, 539 A.2d 1113, 1127 (Md. 1988)).

The Carbones, however, rely on "bald and conclusory allegations" of gross negligence, and not the requisite specific allegation of wanton and willful conduct. As the standing water issue was resolved on March 4, 2015, Plaintiffs' allegations concern remediation, or lack thereof, of the alleged mold and water damage. They repeatedly use terms associated with gross negligence, including, *inter alia*, "wanton," "willful," "malicious," and even "evil." Yet, the allegations accompanying these terms are speculative and devoid of any factual support. Plaintiffs contend that Deutsche Bank's "failure" to ameliorate promptly the water damage reveals that Deutsche Bank's "motives are evil, wrongful and fraudulent[.]" Amended Compl. ¶ 80. These "evil motives" stem from Deutsche Bank's alleged "hope[] that Plaintiffs would give up pursuing [remediation] and remedy the issues themselves or that new homeowners would purchase the REO Property." *Id.* Deutsche Bank's "business decision" allegedly reflects its "common practice" of purchasing foreclosure properties, neglecting them, and then reselling the properties "as is." Resp. in Opp'n to Def. Deutsche Bank's Mot. to Dismiss, 6, ECF No. 46.

8

Plaintiffs' various assertions that Deutsche Bank made a "business decision" with respect to the REO Property may be, as Plaintiffs contend, the "most logical" conclusion, but it is merely that—a purely speculative conclusion wholly unsupported by any specific allegation. The Amended Complaint only alleges facts specific to the REO Property, and absolutely no facts related to Deutsche Bank's foreclosure practices in general. Gross negligence requires "extraordinary or outrageous conduct amounting up to a wanton or reckless disregard[.]" *Liscombe*, 495 A.2d at 845. The Amended Complaint, however, is devoid of any facts demonstrating such "extraordinary" conduct by Deutsche Bank, in this case or otherwise. As such, Count II must be dismissed as to Deutsche Bank.

### 2. Punitive Damages

Plaintiffs' inadequate pleadings also necessitate the dismissal of their request for punitive damages. In Maryland, "an award of punitive damages must be based upon actual malice, in the sense of evil or wrongful motive, intent to injure, ill will, or fraud." *Bowden v. Caldor*, 710 A.2d 267, 276 (Md. 1998). As with gross negligence, a properly pleaded claim of actual malice requires a "high degree of specificity." *Scott v. Jenkins*, 690 A.2d 1000, 1007 (Md. 1997). Yet once again, the Amended Complaint proffers only conclusory allegations of malice, and no factual allegations. Plaintiffs' request for punitive damages will thus be dismissed on the same grounds as their claim for gross negligence.

### 3. Preliminary Injunction

An essential prerequisite for a preliminary injunction is the plaintiff's "clear showing" that "he is likely to succeed on the merits[.] *The Real Truth About Obama*, 575 F.3d at 345 (quoting *Winter*, 555 U.S. at 20). The Amended Complaint, however, does not clear this first

9

hurdle. Plaintiffs essentially allege that, as record owner of the REO Property, Deutsche Bank both contributed to and is responsible for the alleged nuisance originating on that property. Amended Compl. ¶ 107. As discussed *supra*, Plaintiffs also make repeated claims of Deutsche Bank's recklessness and indifference in its ownership of the REO Property, however these claims are wholly conclusory and devoid of any factual support. Beyond the allegations of ownership and notice, the Amended Complaint simply does not include facts sufficient to bear Plaintiffs' burden of establishing a *likelihood* of success on the merits. Discovery may certainly reveal facts to substantiate Plaintiffs' allegations of negligence on the part of Deutsche Bank. At this point, however, the Carbones have not demonstrated the requisite likelihood of success, and thus, the necessity of injunctive relief.[6] Accordingly, their request for a preliminary injunction must be denied.

### B. Defendant Altisource Holdings's Motion to Dismiss

Altisource Holdings, a Delaware limited liability company with its principal place of business in Luxembourg City, Luxembourg,[7] argues that this Court cannot exercise personal jurisdiction under Maryland law or the United States Constitution. Mem. in Support of Def. Altisource Holdings's Mot. to Dismiss, 2, ECF No. 45-1. Before a court can exercise personal jurisdiction over a non-resident defendant, a court must determine that (1) the exercise of jurisdiction is authorized under the state's long-arm statute pursuant to Rule 4(k)(1)(a) of the Federal Rules of Civil Procedure; and (2) the exercise of jurisdiction

---

[6] Given the four-month delay between the filing of this action in state court and the inclusion of a request for injunctive release, Plaintiffs have also failed to demonstrate irreparable harm. While the potential side effects of mold exposure *could* be irreparable, this delay fatally weakens their reliance on this risk.

[7] Plaintiffs incorrectly allege in the Amended Complaint that Altisource Holdings's principal place of business is in the State of Georgia. Amended Compl. ¶ 8. Regardless, Plaintiffs do not dispute that this Defendant is not a resident of Maryland.

conforms to the Fourteenth Amendment's due process requirements. *Carefirst*, 334 F.3d at 396; *see also Christian Sci. Bd. of Dirs. of the First Church of Christ v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001); *Armstrong,* 2015 WL 751344, at *4-7. When interpreting the reach of Maryland's long-arm statute, Md. Code Ann., Cts. & Jud. Proc., § 6-103(b), a federal district court must adhere to the interpretations of the Maryland Court of Appeals. *See Snyder v. Hampton Indus., Inc.*, 521 F. Supp. 130 (D. Md. 1981), *aff'd*, 758 F.2d 649 (4th Cir. 1985). Although Maryland courts "have consistently held that the state's long-arm statute is coextensive with the limits of personal jurisdiction set out by the Due Process Clause of the Constitution," *Carefirst*, 334 F.3d at 396, the long-arm statute must still be examined as part of the two-step personal jurisdiction analysis. *Mackey v. Compass Mktg., Inc.*, 892 A.2d 479, 493 n.6 (Md. 2006).

To satisfy the long-arm prong of a personal jurisdiction analysis, a plaintiff must specifically identify a provision in the Maryland statute that authorizes jurisdiction. *Ottenheimer Publishers, Inc. v. Playmore, Inc.*, 158 F. Supp. 2d 649, 652 (D. Md. 2001). While it is preferable that a plaintiff identify the statute authorizing jurisdiction in its complaint, the plaintiff alternatively may reference the applicable statute in its response to a defendant's motion to dismiss. *Johansson Corp. v. Bowness Constr. Co.*, 304 F. Supp. 2d 701, 704 n.1 (D. Md. 2004).

Once a plaintiff identifies the specific Maryland statute conferring jurisdiction over the defendant, a court turns next to the second prong of the personal jurisdiction analysis. Under this prong, this Court must determine whether the exercise of personal jurisdiction would comport with the due process requirements of the Fourteenth Amendment. For a non-resident defendant, "due process requires only that . . . a defendant . . . have certain

minimum contacts . . . such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). A "minimum contacts" determination rests on the number and relationship of a defendant's contacts to the forum state, as well as whether the present cause of action stems from the defendant's alleged acts or omissions in the forum state. *See Int'l Shoe Co.*, 326 U.S. at 316. Thus, a court may exercise general jurisdiction, where the defendant has continuous and systematic contacts in the forum, or specific jurisdiction, where the suit arises from the defendant's contacts. *Carefirst*, 334 F.3d at 397; *see also Armstrong*, 2015 WL 751344, at *7-8. While Plaintiffs have not alleged any continuous contacts between Altisource Holdings and Maryland, there is the allegation of specific contacts between the parties in this state. Accordingly, the inquiry in this matter is with respect to specific, and not general, jurisdiction.

Plaintiffs do not dispute that Altisource Holdings is not a resident of Maryland. Rather, their efforts to establish a *prima facie* showing of personal jurisdiction fail under both prongs of analysis. Turning to the first prong, they appear to rely on the first three provisions of Maryland's long-arm statute. In pertinent part,

> a court may exercise personal jurisdiction over a person, who directly or by an agent:
> (1) Transacts any business or performs any character of work or service in the State;
> (2) Contracts to supply . . . services in the State; [or]
> (3) Causes tortious injury in the State by an act or omission in the State[.]

Md. Code Ann., Cts. & Jud. Proc. § 6-103(b). Plaintiffs allege that, "[u]pon information and belief, Altisource Holdings was at all times the point of contact for the REO Property."

Resp. in Opp'n to Def. Altisource Holdings's Mot. to Dismiss, 5, ECF No. 51. As this alleged "point of contact," Altisource Holdings purportedly transacted business, entered into contracts, and then caused tortious injury to the Carbones, all in the State of Maryland. *See* Amended Compl. ¶¶ 43-60.

Yet, Altisource Holdings did not participate in any way in the events underlying this action. Def. Altisource Holdings's Mot. to Dismiss Ex. 1, Esterman Decl. ¶ 8, ECF No. 45-2. According to Michelle Esterman, a manager at Altisource Holdings, neither the Defendant nor any subsidiaries is a resident of Maryland. *Id.* ¶ 3. Altisource Holdings "is not licensed or registered to do business in Maryland[;] . . . has no registered Agent in Maryland[;] . . . does not lease, sublease or own any property in Maryland or have a mailing address in Maryland." *Id.* ¶¶ 4-5. Further, Altisource Holdings has no employees in Maryland. *Id.* ¶ 6. Indeed, the Defendant "pays no taxes of any kind to any Maryland taxing authority and does not maintain any bank accounts in Maryland." *Id* ¶ 7. Quite simply, Altisource Holdings "committed no acts or omissions in Maryland" related to the Carbones, the Carbone Property, or the REO Property. *Id.* ¶ 8.

Plaintiffs offer only their "information and belief" as support for Altisource Holdings's alleged involvement in the underlying events, however such speculation does not suffice for a *prima facie* showing of personal jurisdiction. Beyond this "information and belief," they offer only a "sample" sale agreement allegedly obtained from a real estate auction website that names "Altisource Holdings, Inc." as the property manager. Resp. in Opp'n Ex. A, ECF No. 51-1. In contrast to Altisource Holdings's sworn, authenticated

declarations, this "sample" is accompanied by no information to substantiate its authenticity. Plaintiffs thus fail to show that Maryland's long-arm statute applies to Altisource Holdings.

Since the "long-arm statute is coextensive with the limits of personal jurisdiction set out by the Due Process Clause of the Constitution," *Carefirst*, 334 F.3d at 396," Plaintiffs do not satisfy the second, constitutional, prong of analysis. As discussed *supra*, Plaintiffs allege only specific, and not general, jurisdiction. However, they establish no connection between their claims and the Defendant. Altisource Holdings simply had no contact the State of Maryland, the REO Property, the Carbone Property, or the Carbones themselves. This Court thus cannot exercise personal jurisdiction over Defendant Altisource Holdings. All claims against this Defendant must be dismissed.

## CONCLUSION

For the reasons stated above, Defendant Deutsche Bank's Partial Motion to Dismiss for Failure to State a Claim (ECF No. 36) is GRANTED and Count II is DISMISSED, as is the request for a preliminary or permanent injunction. Defendant Altisource Holdings's Motion to Dismiss for Lack of Jurisdiction (ECF No. 45) is GRANTED and all claims against Altisource Holdings are thus DISMISSED.

A separate Order follows.


Dated: August 5, 2016 \_\_\_/s/_____
Richard D. Bennett
United States District Judge